SMART–WAY TRUCKIN',
INC., Appellant,

v.

COTA INDUSTRIES, INC., Appellee.

COTA INDUSTRIES, INC., Appellee,

v.

SMART–WAY TRUCKIN',
INC., Appellant.

SMART–WAY TRUCKIN',
INC., Appellant,

v.

EQUITY TRANSPORTATION,
INC., Appellee.

EQUITY TRANSPORTATION,
INC., Appellee,

v.

SMART–WAY TRUCKIN',
INC., Appellant.

No. 86–1858.

Supreme Court of Iowa.

Oct. 19, 1988.

James B. Smith of Shirley, Smith, Shirley & Powell, Perry, for appellant Smart–Way Truckin', Inc.

John C. Conger of LaMarca, Marcucci, Wiggins & Anderson, P.C., West Des Moines, for appellee Cota Industries, Inc.

Eric F. Turner of Herrick, Langdon & Langdon, Des Moines, for appellee Equity Transp., Inc.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, NEUMAN, and SNELL, JJ.

SCHULTZ, Justice.

This appeal is based on a dispute between a shipper and two semi-truck carriers. Cota Industries took bids and awarded a contract to Smart–Way Truckin' Inc. to haul its products from Iowa to Ohio. Smart–Way contacted Equity Transportation, Inc. about leasing its equipment to transport the goods. George Passmore was the driver of the tractor-trailer. The product was an exterior wall covering that deteriorates to the point that it is no longer suitable for use when it freezes.

The original action was commenced by Smart–Way against Cota in small claims court. This action was transferred to district court when Cota filed a counter-claim alleging that Smart–Way was responsible for allowing the material shipped to freeze, rendering it worthless. Smart–Way filed a claim for indemnity against Equity. The trial court held that Smart–Way breached its contract and was negligent in its shipment of the product. The court additionally held that Smart–Way failed to establish that Passmore was an employee or agent of Equity or that the product was in Equity's possession during the trip. It ruled that Smart–Way was precluded from indemnification under its contract.

On appeal, Smart–Way contends that: (1) Cota Industries is not the proper party to maintain its action against Smart–Way; (2) there was insufficient evidence to support the district court's finding that Smart–Way was liable to Cota; and (3) Equity Transportation was entitled to indemnity from Smart–Way.

I. *Jurisdiction.* On appeal, we raised the matter of appellate jurisdiction. The record shows that on December 31, 1986, the notice of appeal was served on the appellee within 30 days from the date of judgment and a copy of the notice was delivered to the clerk of the supreme court. *See* Iowa R.App.P. 5(a), 6(a). A problem emerged because as late as March 17, 1987, the district court clerk's file showed no filing of the notice. The issue is whether this procedure provided us authority to hear the appeal.

Our rules prescribe the procedure for an appeal. An appeal "is taken and perfected by filing a notice with the clerk of court where the order, judgment or decree was entered." Iowa R.App.P. 6(a). The time for filing is "tolled when service is made, provided the actual filing is done within a reasonable time thereafter." Iowa R. Civil P. 82(d). Under similar circumstances we held that a 63–day delay from service on the parties to actual filing of the notice of appeal does not meet the "reasonable time" test and deprives this court of jurisdiction. *Gordon v. Wright County Bd. of Supervisors,* 320 N.W.2d 565, 567 (Iowa 1982).

When we discovered this problem, we requested the parties to file statements addressing the jurisdictional issue. Appellant took two courses of action. First, it presented affidavits claiming that the notice of appeal was mailed to the clerk of the district court.

Second, appellant caused the clerk of court to commence an action in rem pursuant to Iowa Code chapter 647, Restoration of Lost Records, requesting the district court to restore the lost, destroyed or misfiled notice of appeal in question. A judg-

ment was entered ordering the clerk of the district court for Polk County to show the notice of appeal in question to be filed as of January 2, 1987. Appellee did not dispute appellant's affidavit nor does it challenge the judgment under chapter 647.

As we understand appellant's first contention, it urges that the appeal was timely filed because it was mailed to the clerk and must have been misplaced, misfiled or lost in that office. This contention raises the issue of whether the filing can be complete when there is no memorandum by the clerk of court of the date of filing or that the actual notice of appeal is accessible in the clerk's office. *See Educational Film Exchanges, Inc. v. Thornburg*, 217 Iowa 178, 178–79, 251 N.W. 66, 67 (1933). We note that Iowa Code section 602.8102(9) in designating matters that the clerk is to include in the appearance docket states in part, "a memorandum of the date of filing of all petitions, ... or papers of any other description in the cause. A pleading of any description is not considered filed in the cause ... until the memorandum is made." In this case we need not decide whether the appeal was filed despite the absence of a memorandum entry of filing by the clerk of court. Our holding on appellant's second contention makes this issue irrelevant.

■ The second issue concerns the effect of the judgment retroactively restoring the notice of the appeal in the district court clerk's office to January 2, 1987. Statutory authority guides us. All such records restored "shall have the same force and effect as the original records before their loss or destruction." Iowa Code § 647.4. Consequently, the record now shows that the appeal was perfected by a timely filing of the notice of appeal.

We hold that we have jurisdiction to hear this appeal. We also considered other jurisdictional contentions, but find no merit in them.

■ We believe that the problems in this litigation provide two suggestions to future litigants. First, it is a good practice to obtain a file-stamped copy of filed papers. Second, an action to correct the record in the district court is a preferable procedure, rather than a similar attempt in appellate court. As a rule, appellate courts do not have the required fact-finding capacity that trial courts possess for this type of action. Additionally, appellate courts generally rely on the record as it appears in the trial court.

II. *Real party in interest.* Smart–Way maintains that because Cota shipped the goods collect, the title shifts from the consignor to the consignee when the carrier takes possession of the goods. It urges that the person who holds title to the goods is the person who is the "real party in interest." Even if we would accept Smart–Way's assertion that title generally passes to the consignee at the time of the delivery of the goods, this does not aid the appellant.

■ Cota had contracted with Smart–Way to deliver the goods. The trial court found that the goods were damaged in transit. The buyer turned to Cota when they found the goods were defective. A justified revocation of the goods revests title to the goods in the seller by operation of law. Iowa Code § 554.2401(4). In the present case, Cota replaced the goods damaged in transit and thereby retained legal title to the cause of action.

The purpose of the real party in interest rule, Iowa R.Civ.P. 2, is simply to protect the defendant from a subsequent action by the party actually entitled to recover. *City of Ames v. Schill Builders, Inc.*, 274 N.W.2d 708, 713 (Iowa 1979) (citation omitted). The consignee of the goods no longer had any claim when Cota replaced the defective product. Cota was the real party in interest.

■ III. *Substantial evidence.* Smart–Way also contends that there was not substantial evidence in the record to support the trial court's finding that the shipment of material was frozen. Our review of the record indicates that there is no basis for this assertion. Evidence was admitted showing that Passmore did not deliver the goods promptly. While enroute, he stopped for a few days in Michigan. Evidence was admitted that the temperatures in Michigan during the stopover went

below the freezing point. The evidence was also clear that the truck was not insulated. While the facts were hotly disputed, there was substantial evidence that Passmore's negligence caused the damages incurred.

█ Smart–Way next urges that there was not substantial evidence to support the trial court's finding that Passmore was an employee of Smart–Way. Our review of the record indicates that there is substantial evidence that Passmore was the employee or agent of Smart–Way during the duration of the trip lease. The evidence indicates that Passmore placed Smart–Way signs on the truck, was subject to the authority of Smart–Way's operation manager and told Cota that he was to pick up the load for Smart–Way. Thus, there was substantial evidence for the trial court's finding that Passmore was an employee or agent of Smart–Way during this trip.

█ This finding of fact precluded Smart–Way's claim for indemnity under either a common law or contract theory. Under either theory, Smart–Way had to establish that Equity had control over Passmore during the trip. The trial court's findings were based on substantial evidence and negate this claim.

AFFIRMED.